**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MARCELA S. SANTOS, | : | | |
| *also known as D.L. Santos*, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-334 (RC) |
| | : | | |
| v. | : | Re Document No.: | 18 |
| | : | | |
| THE TRUSTEES OF GRINNELL COLLEGE, | : | | |
| *doing business as Grinnell College*, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

## I.  INTRODUCTION

The Plaintiff, Marcela S. Santos has brought a complaint against the Defendant, Trustees of Grinnell College ("Grinnell"), for non-employment disability discrimination, breach of published college medical leave policy, promissory estoppel, intentional infliction of emotional distress, and negligent infliction of emotional distress based on a special relationship. Ms. Santos filed a related suit in California centering on essentially the same subject matter. Grinnell has moved to dismiss Ms. Santos's complaint for improper venue and/or forum non conveniens, or, in the alternative, moves to transfer venue.  Ms. Santos opposed this motion on the grounds that venue in the District of Columbia is proper and that the interests of justice do not favor transfer.  Ms. Santos also posits that 28 U.S.C. § 1391, rather than Title VII, should govern whether venue is proper.  For the reasons discussed below, the Court grants Grinnell's motion to transfer the case to the United States District Court for the Southern District of Iowa.

## II.  FACTUAL BACKGROUND

Ms. Santos is a twenty-two year old individual domiciled in Maryland.  Am. Compl. ¶ 10.  Grinnell, a nonprofit corporation incorporated in Iowa, is a liberal arts college located in Grinnell, Iowa.  Def.'s Mem. at 4.  Ms. Santos enrolled at Grinnell as a member of the college's 2008–2009 freshman class and arrived on campus in Iowa in August 2008.  *Id.* at 7.  Ms. Santos, who has ancillary impediments to academic progress stemming from her bipolar disorder, Am. Compl. ¶ 31, alleges that she was assured by Grinnell that she would be provided an on-campus mentor to help neutralize her condition.  *Id.* ¶ 33.

Ms. Santos was to meet with her on-campus mentor, Judy Hunter, Def.'s Mem. at  6, on a weekly basis, alternating between one-on-one and group meetings with similarly situated students.  *Id.* ¶ 35.  Such meetings were to occur on-campus, in Iowa.  Ms. Santos alleges that Ms. Hunter failed to track her academic progress and that she learned late in the semester that she was on the verge of failing all her courses due to missed assignments.  Am. Compl. ¶ 37.  Ms. Santos was then referred to Joyce Stern, Grinnell's Dean of Academic Support and Advising, *id.* ¶ 37, whereupon Ms. Stern received permission from Ms. Santos to contact her psychiatrist.  *Id.* ¶ 38.  Ms. Santos's psychiatrist informed Ms. Stern that Ms. Santos's medication led her to fall behind on her coursework.  *Id.* ¶ 39.  Ms. Stern then reported this information to Ms. Santos's professors and instructed Ms. Santos to seek additional time to complete her missed assignments.  *Id.* ¶ 39.  Ms. Santos and her professors, though, were unable to reach mutually agreeable accommodations.  *Id.* ¶ 40.  To avert a slate of failed grades, Ms. Stern allegedly provided Ms. Santos with two choices on the eve of finals:  She could either complete her missed assignments within two weeks after finals or she could secure a medical leave of absence via a written explanation of her medical state from her psychiatrist.  *Id.* ¶¶ 42–

43.  If she opted to take a medical leave, Ms. Santos's transcript would reflect that she had withdrawn from all her classes that semester.  *Id.* ¶ 43.  Ms. Santos elected to pursue a medical leave of absence, and Ms. Stern granted her request.  *Id.*; Def.'s Mem. at 7.

While Ms. Santos was on medical leave, she requested an academic accommodation, which would allow her to receive regular feedback on her academic progress from her on-campus advisor.  Am. Compl. ¶ 47.  Ms. Santos indicates that Grinnell had committed to abide by her plan.  *Id.* ¶ 49.  Ms. Santos, though, alleges that Grinnell quickly withdrew its support for the plan upon her return from medical leave.  *Id.* ¶ 52.  Namely, Ms. Stern did not want professors to supply written answers to four interrogatories regarding Ms. Santos's academic progress.  *Id.*  Rather, Grinnell proposed a system whereby faculty would inform administrators if Ms. Santos fell into academic trouble.  *Id.* ¶ 62.  This alternative accommodation was deemed unsuitable by Ms. Santos's psychiatrist.  *Id.*  After six weeks of discussions regarding Ms. Santos's request for academic accommodation, on March 12, 2009, Ms. Stern informed Ms. Santos that her accommodation request had been denied.  *Id.* ¶ 64.  Ms. Santos alleges that this six week discussion was purposely devised to "grind [Ms. Santos] down" and lead her to withdraw her request.  *Id.* ¶ 65.  Ms. Santos suggests that this plan may have been endorsed by two Grinnell vice presidents.  *Id.*

During Ms. Santos's second semester, including the intermediate time between her accommodation request and Grinnell's subsequent denial, Ms. Stern and Grinnell professors allegedly pushed Ms. Santos to manage her own academic progress.  *Id.* ¶¶ 67–68.  The time in which this pressure was being applied coincided with a worsening of Ms. Santos's health as she "descend[ed] into a clinical bipolar state of depression."  *Id.* ¶ 68.  In one notable incident, one of Ms. Santos's professors sent her an email indicating his displeasure with Ms. Santos's failure to

communicate with him.  *Id.* ¶ 70.  This incident caused Ms. Santos severe emotional distress,

which led her to fly back to the "D.C. area" along with her parents (who had flown to Iowa after

learning of Ms. Santos's distress).  *Id.* ¶¶ 72, 74.  There, she met with her Maryland

psychotherapist and psychiatrist.  *Id.* ¶ 74.  While Ms. Santos's parents were in Iowa, they

solicited an explanation from Ms. Stern for the professor's antagonizing email.  *Id.* ¶ 75.  After

receiving treatment from her Maryland doctors, Ms. Santos's condition was stabilized and she

resumed her studies in Grinnell, Iowa.  *Id.* ¶ 74.  Upon Ms. Santos's return to campus, Ms. Stern

offered her the option to withdraw from the course that the offending professor instructed.  *Id.*

¶ 76.  Ms. Santos withdrew from that course and finished her remaining courses.  *Id.*  After the

semester ended, Ms. Santos withdrew from Grinnell.  Def.'s Mem. at 9.

## III.  DISCUSSION

### A.  Legal Standard

"Rule 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or

inconvenient in the plaintiff's chosen forum."  *Poku v. FDIC*, 752 F. Supp. 2d 23, 26 (D.D.C.

2010).  "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual

allegations regarding venue as true, draws all reasonable inferences from those allegations in the

plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."  *Williams v. GEICO*

*Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Pendleton v. Mukasey*, 552 F. Supp. 2d 14,

17 (D.D.C.2008)).  But the Court need not accept Plaintiff's legal conclusions, *Darby v. U.S.*

*Dep't of Energy*, 231 F. Supp. 2d 274, 277 (D.D.C. 2002), nor "inferences that are unsupported

by the facts set out in the complaint," *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013)

(citing *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  "A court may [also] consider

material outside of the pleadings in ruling on a motion to dismiss for lack of venue . . . ." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

"Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C.2003).  If venue is improper, "[t]he district court . . . shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir.1983).

Even when venue is proper, however, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Continental Grain Co. v. Barge F.B.L.–585*, 364 U.S. 19, 26 (1960).  "[T]he main purpose of section 1404(a) is to afford defendants protection where maintenance of the action in the plaintiff's choice of forum will make litigation oppressively expensive, inconvenient, difficult or harassing to defend." *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc); *accord Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" (quoting *Continental Grain*, 364 U.S. at 26, 27)).  When venue is properly laid in this district, "[t]ransfer elsewhere under Section 1404(a) must . . . be

justified by particular circumstances that render [this] forum inappropriate by reference to the considerations specified in that statute.  Absent such circumstances, transfer in derogation of properly laid venue is unwarranted." *Starnes*, 512 F.2d at 925–26.

Section 1404(a) "vests 'discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  And it "directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs.  The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).  The precise "standards to be considered in determining whether to grant or deny a section 1404(a) motion to transfer are generally . . . left to the discretion of the trial court," *SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978), which is "broad" but "not untrammeled," *Fine v. McGuire*, 433 F.2d 499, 501 (D.C. Cir. 1970) (per curiam) (noting that the trial court must "give consideration to the traditional [forum non conveniens] factors, including the plaintiff's choice of forum").  With that said, the weight given to a plaintiff's choice of forum is mitigated when it is not the plaintiff's home forum.  *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 58 (D.D.C. 2012).  Deference to the plaintiff's choice of forum is also lessened when the applicable forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter."  *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000).

**B.  Analysis**

For the purpose of this opinion, it is assumed, but not decided, that 28 U.S.C. § 1391 governs whether venue is proper, as per Ms. Santos's argument.  It is further assumed, but not decided, that under 28 U.S.C. § 1391 venue is proper in the United States District Court for the District of Columbia.  Even still, this Court transfers this case to the United States District Court for the Southern District of Iowa under 28 U.S.C. § 1404.

1.  Iowa is a Proper Venue

Under 28 U.S.C. § 1404, the Court may only transfer this case to the Southern District of Iowa if this case "might have been brought" in that district.  28 U.S.C. § 1404(a).  Under the general federal venue statute, which this Court assumes is applicable to this issue, a case may be brought in in any district in which any defendant resides, as long as all defendants reside in the State in which the district is located.  28 U.S.C. § 1391(b)(1).  Here, there is no dispute that Grinnell, as the only defendant in this suit, is an Iowa resident.  Furthermore, this case could have been brought in any district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, the crux of this lawsuit lies in Grinnell's alleged failure to adequately accommodate Ms. Santos's medical condition while she was a residential student of Grinnell on its Iowa campus.  Accordingly, most, if not all, developments relevant to this suit took place in Iowa.  Ms. Santos struggled with her academic progress while in Iowa.  Ms. Hunter allegedly failed to properly track Ms. Santos's academic progress in Iowa.  Ms. Santos's accommodation request was targeted to aid her studies in Iowa.  The various deliberations and discussions between Ms. Santos and Ms. Stern regarding Ms. Santos's academic options and requests for accommodation occurred, primarily, if not exclusively, in Iowa.  During her second semester, Ms. Santos was allegedly pressured by

Ms. Stern and her college professors to manage her academic progress in Iowa.  If there was a

plan, which may or may not have been supported by two Grinnell vice presidents, to get

Ms. Santos to withdraw her request, such a plan would have been devised in Iowa.  Indeed, even

Ms. Santos's parents met with Ms. Stern in Iowa.  Thus, it is clear that venue is proper in the

United States District Court for the Southern District of Iowa under 28 U.S.C. § 1404(a).

2.  Iowa is the More Convenient Forum

Having decided that the Southern District of Iowa is a proper venue for this case, the

Court must now consider whether the "particular circumstances" of this case warrant a transfer to

said district.  *Starnes*, 512 F.2d at 925–26.  In order to do this the Court will address the private

and public interests of transferring this case to the Southern District of Iowa.  *Stewart Org.*, 487

U.S. at 30.

*a.  Private Interest Factors*

The private-interest factors which should be considered include: (1) the plaintiff's choice

of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the

convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to

sources of proof.  *Montgomery v. STG Int'l, Inc.,* 532 F. Supp. 2d 29, 32–33 (D.D.C. 2008)

(citing *Akiachak Native Cmty. v. U.S. Dep't of Interior,* 502 F. Supp. 2d 64, 67 (D.D.C. 2007)).

Here, it is clear these factors weigh in favor of the transferring this suit to Iowa.  First, the

deference provided to the plaintiff's choice of forum is lessened by Ms. Santos's admission that

she is a resident of Maryland.  Second, Grinnell's choice of forum is Iowa, where it is

incorporated and where its principal place of business presides.  Third, the claim is based upon

Grinnell's actions, or lack thereof, which took place in Iowa.  Regarding the convenience of the

parties, the Iowa forum is likely to be less convenient to Ms. Santos than it is to Grinnell.

However, given Ms. Santos's willingness to file a related suit in California, any inconvenience of moving forward with this suit in Iowa should not be considered overly burdensome to Plaintiff. Fifth, the primary witnesses of this suit would appear to be primarily Grinnell employees, all of whom currently work or, at least, have worked in Iowa; Ms. Santos, who spent the equivalent of an academic year in Iowa; and Ms. Santos's parents, who flew to Iowa on at least one occasion. Ms. Santos may wish to have other witnesses who are located in Maryland or the "D.C. Area," such as Ms. Santos's psychotherapist and psychiatrist, but the primary witnesses who were directly involved with Ms. Santos's academic progress at Grinnell either reside or, at least, have resided in Iowa pursuant to their employment or academic studies at Grinnell.  Last, the extent to which proof is accessible is not a weighty factor in this case, since as Ms. Santos states, "[a]ccess to sources of proof is effortless since documentary evidence in this matter is portable . . . ."  Pl.'s Ans. Br. ¶ 69.  Ultimately, the Court finds that the private interest factors in this suit support a transfer to Iowa.

### b. Public Interest Factors

"Courts in this district have consistently found that the public interest favors allowing [courts in] the state in which the alleged wrongful conduct took place to resolve conflicts arising from acts committed entirely in that state." *Spaeth*, 845 F. Supp. 2d at 59 (quoting *Levin v. Majestik Surface Corp.,* 654 F. Supp. 2d 12, 16 (D.D.C. 2009).  Accordingly, courts may refer to the following considerations to evaluate the public interest of transferring a particular case: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Montgomery*, 532 F. Supp. 2d at 34.

The Court gives the final factor particular weight, given the District of Columbia's lack of interest in this suit.  The two parties are non-residents and the basis of this suit involves events that took place almost exclusively in Iowa.  Thus, the District of Columbia's connection to this suit is, at best, attenuated, particularly when considered in light of Iowa's interest in adjudicating a matter which involves an Iowa resident and substantially involves factual allegations which took place in Iowa.  Accordingly, the public interest considerations favor a transfer to Iowa.

## IV.  CONCLUSION

For the foregoing reasons, the Court transfers this suit to the United States District Court for the Southern District of Iowa, pursuant to 28 U.S.C. § 1404.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  November 25, 2013                                    RUDOLPH CONTRERAS
                                                             United States District Judge